Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| JESSICA MORALES<br><br>Recurrida<br><br>v.<br><br>POPULAR AUTO LLC<br>**WALTER PÉREZ MONTAZ h/n/c HORMIGUEROS AUTO**<br><br>Recurrente | KLRA202400485 | Revisión Judicial Procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.:<br>MAY-2023-0004630<br><br>Sobre:<br>Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO) |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de octubre de 2024.

El 30 de agosto de 2024, Walter Pérez Montaz h/n/c Hormigueros Auto (en adelante, la parte recurrente) compareció ante este Tribunal de Apelaciones mediante recurso titulado *Apelación*. En este, nos solicita la revocación de la *Resolución* emitida el 26 de junio de 2024 por el Departamento de Asuntos del Consumidor (en adelante, DACO). Por virtud del aludido dictamen, el DACO declaró Con Lugar la *Querella* que Jessica Morales sometió en su contra, le ordenó a todas las partes querelladas a reembolsar solidariamente la cantidad de $5,447.28, devolver una suma adicional de $1,545.00 y decretó la rescisión del contrato de compraventa suscrito por todas las partes.

Estudiado el legajo apelativo, y conforme al derecho que más adelante exponemos, **confirmamos** la determinación recurrida.

-I-

El 8 de agosto de 2023, Jessica Morales (en adelante, la recurrida) presentó ante el DACO *Formulario Presentación Querella Vehículo de Motor*

contra Popular Auto y Walter Pérez Montaz h/n/c Hormigueros Auto. Indicó allí que el 10 de febrero de 2023 adquirió de los querellados un vehículo Dodge Journey del año 2017, Tablilla JPQ004, por $13,995.00. Asimismo, manifestó que desde finales de ese mismo mes el vehículo comenzó a mostrar desperfectos. Específicamente, alegó como a continuación se transcribe:

> "Antes de dar el primer pago de la guagua se le notific[ó] a Hormigueros Auto (Walter P[é]rez) que la guagua estaba teniendo fallos mec[á]nicos y del aire. Mi primer pago fue en marzo y para eso a pesar de que Hormigueros [A]uto [haber] dicho que había reparado el desperfecto y el aire segu[í]a teniendo problemas. En marzo se le acaba el marbete y tengo problemas con que me entregaran documentos y logro conseguirlos como semana o semana y media despu[é]s proceso a ponerle el ma[r]bete y al otro día la guagua se calienta y le notifico ya que llevaba tiempo notificando que la guagua no está cogiendo cambio y estaba teniendo problemas ellos insisten de que no pero como quiera se llevan la guagua al dealer tuviero[n] aproximadamente 2 d[í]as con ella y luego notifican que supuestamente es la bomba de agua y me la entregan y de camino a [Mayagüez] se calent[ó], se les notifica [e] indican que vuelva para atr[á]s y al regresar la guagua se calent[ó] y se apag[ó] tuvieron abril hasta julio con la guagua, me la entregan y en menos de una semana la guagua no cog[í]a cambio y cuando se va a llevar al dealer se calentó y se apagó. En todo momento Hormigueros se ha negado a entregarme la carta de labor."

El 13 de septiembre de 2023, el DACO emitió la correspondiente *Notificación de Querella*. El 26 de septiembre del mismo año, citó a las partes a una inspección para el 11 de octubre de 2023 a las 10:00 a.m.[1] El 13 de octubre de 2023 se archivó el Informe de Inspección. Este fue notificado a las partes el día 17 del mismo mes y año. Los hallazgos de la inspección fueron los siguientes:

> El día 11 de octubre del 2023 a las 10:00 a.m. se celebró una inspección conjunta en las facilidades de la parte querellada. Al momento de la misma la unidad se encontraba con la batería descargada. Querellante us[ó] otro vehículo para poder encender la unidad objeto de la querella. La unidad objeto de la inspección se logró encender, pero al momento de encenderse la unidad empezó a subir y bajar revoluciones y se apagó. Este funcionario le conectó el escáner para verificar por códigos de fallo ya que este funcionario necesitaba que el motor se quedara encendido para poder saber el porqué la unidad se calentaba.
>
> Los códigos de falla fueron los siguientes:

---

[1] En la fecha citada para el examen del vehículo, la querellada Popular Auto contestó la *Querella*. Véase, págs. 10-12 del *Apéndice.*

P0108 "map sensor high input"
P0562 "system voltaje low"
P0622 "generator field"

Se pudo observar que los conectores del alternador y el "map sensor" se encontraban desconectados, por tal razón es que la unidad encendió fallando y se apagaba. Luego de encender la unidad sin fallo alguno, se verificó si la unidad se calentaba y esta no se calentó. Se realizó prueba de carretera para saber si la unidad se calentaba estando en marcha y no se calentó. En la prueba de carretera estuvieron presentes querellante, querellado y este funcionario.

En cuanto los cambios de transmisión querellado ya había realizado la reparación. La reparación consistió en ajustar el cable de los mismos. Además querellado indicó que se había realizado trabajo de tapa de bloque a la unidad y le había instalado 4 gomas nuevas. En cuanto al aire acondicionado querellado compró compresor nuevo para que el querellante lo enviara a instalar. La Hoja de servicio de los trabajos realizados a la unidad, querellado indicó que no la tenía al momento pero de ser necesario se la entregaría a la querellante.

Así, el inspector del DACO recomendó que se verificara por un electromecánico el sistema de encendido del abanico del radiador ya que el abanico tiene dos velocidades y solo le trabaja la velocidad "high mode"; que se instalara el compresor de aire, se realizara un "flush" al sistema de aire y se reemplazara el conector del alternador. El estimado de estos trabajos fue de $262.00. Asimismo, y a modo de observación, el Inspector recomendó a la recurrida a conseguir el conector del alternador pues por el movimiento de la unidad, podría desconectarse y la batería dejaría de cargar.[2]

Finalmente, el 25 de junio de 2024, se celebró la vista administrativa ante el DACO. Luego de esto, el DACO emitió la *Resolución* recurrida en la que, conforme a los testimonios recibidos, el informe de investigación y la prueba documental, formuló 22 determinaciones de hechos. De estas, estimamos importante destacar las siguientes:

1. Entre la parte vendedora, Walter Pérez Montaz h/n/c Hormigueros Auto, y la querellante, se perfeccionó el 10 de febrero de 2023, un contrato de compraventa de una unidad vehicular marca Dodge modelo Journey del año 2017, con un millaje 68,100.
[…]

---

[2] Ver págs. 15-17 del Apéndice.

7. **Desde el mismo mes de la compraventa, la unidad vehicular comprada evidenció problemas de calentamiento, "haloneos", mal funcionamiento de la transmisión, motor y aire acondicionado.**

8. La unidad vehicular estuvo en reparaciones desde febrero, en marzo y abril en dos ocasiones.

9. En la segunda ocasión que el auto estuvo en abril para reparación no fue reparado sino hasta mediados de mayo o principios de junio de 2023.

10. Para el mes de julio de 2023 el auto volvió a presentar problemas.

11. La parte vendedora proveyó transportación a la querellante durante las reparaciones.

 […]

14. De regreso de la inspección el auto de la querellante confrontó problemas con la polea y dejó de funcionar, para mitigar daños y utilizar su vehículo lo [envió] a reparar.

15. El testimonio bajo juramento de la querellante no fue controvertido con evidencia alguna. Por lo que se le dio absoluta credibilidad.

16. El testimonio del querellado fue a los efectos de prueba de referencia sobre alegadas conductas de la querellante por alegados testimonios de terceras personas y que a él no le constan de propio y personal conocimiento.

17. El propio informe pericial corrobora el testimonio de la querellante sobre problemas en transmisión, motor y aire acondicionado.

18. Antes de radicar la querella la querellante brindó más que oportunidades al vendedor para que saneara la unidad vehicular y este no lo hizo.

19. **No hay controversia que las reclamaciones se hicieron en garantía y el término de saneamiento.[3]**

[…]

21. Al día de la vista administrativa la querellante solicitó la resolución del contrato.

22. La parte querellante efectuó pagos desde marzo de 2023 hasta el mes de abril de 2024. Surge del contrato de venta condicional que el pago de marzo es de $468.02, y pagos mensuales de $383.02.

---

[3] Dado que fue un hecho formulado conforme a la evidencia que las distintas reclamaciones de desperfectos levantadas por la recurrida- entiéndase las oportunidades brindadas para sanear la unidad vehicular aludida en hecho determinado número 18- se hicieron en garantía, es innecesario evaluar las disposiciones legales relativas a las garantías de vehículo que establece el Reglamento 7159 del DACO, *Reglamento de Garantías de Vehículos de Motor*. Igual de redundantes resultan ante este hecho los argumentos señalados por la parte recurrente en la página 9 de su recurso en cuanto a que a la fecha de la querella y al día de la inspección el vehículo en controversia no estaba cubierto por garantía alguna.

Basándose en las determinaciones de hechos formuladas, el DACO encontró probado que los defectos del vehículo no fueron accesorios o que no menoscabaran su uso y finalidad, sino más bien, graves, destacándose que estos eran "[a] tal nivel que se realizó trabajos en la tapa del bloque y problemas en la transmisión.". [4] Por los hechos encontrados probados, el DACO declaró Ha Lugar la Querella y concedió 20 días a las querelladas para que reembolsaran a la recurrida la totalidad de las mensualidades pagadas por esta, devolver la cantidad de $1,545.00 tomados como pronto o auto en cambio y tomar las medidas para cancelar el contrato de financiamiento, entre otras cosas.

Inconforme, la parte recurrente sometió *Moción en Reconsideración*. El DACO no acogió ni resolvió la solicitud de reconsideración dentro del término establecido por Ley para ello, por lo que la parte recurrente instó el recurso de epígrafe. Allí, a modo de único señalamiento de error alegó que se equivocó el DACO al conceder la Querella y ordenar la rescisión del contrato "sin existir los elementos jurídicos para conceder dicho remedio". Atendido el recurso, el 4 de septiembre de 2024, notificada el día 6, emitimos *Resolución* en la que concedimos 30 días a la recurrida para someter su posición. En cumplimiento con ello, el 26 de septiembre de 2024, esta compareció por derecho propio y relató los hechos por los que a su entender la determinación administrativa recurrida debía ser confirmada.

Con el beneficio de la comparecencia de las partes, damos por sometido el asunto, exponemos el derecho aplicable y resolvemos.

-II-

*A.*

---

[4] Véase, página 29 del Apéndice.

Es norma hartamente conocida y reiterada en nuestro ordenamiento jurídico que los foros apelativos deben conceder amplia deferencia a las decisiones administrativas debido a la experiencia y pericia que estos organismos, presumiblemente tienen respecto a las facultades que se les han delegado. Otero Rivera v. Bella Retail Group, Inc., 2024 TSPR 70, 213 DPR ____, al citar a Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019) y Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial que las disposiciones de dicha ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión.[5] Asimismo, la Sección 4.2 de la LPAU establece que la parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final.[6]

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Capote Rivera v. Voili Voila Corporation, 2024 TSPR 29, 213 DPR ____, al citar a Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia,

---

[5] 3 LPRA Sec. 9671
[6] 3 LPRA Sec. 9672.

sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Íd.,* al citar a Otero v. Toyota, 163 DPR 716, 729 (2005). Ello así, puesto a que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección por su vasta experiencia y conocimiento especializado y, conforme ya citamos, merecen deferencia por parte de los foros judiciales. Otero Rivera v. Bella Retail, Group, et al., *supra*.

Ahora, la deferencia antes mencionada no es absoluta. Capote Rivera v. Voili Voila Corporation, *supra.* Por ello, la presunción de regularidad y corrección se respetará a no ser que la parte que las impugne presente prueba suficiente para rebatir tal presunción. Otero Rivera v. Bella Retail, Group, et al., *supra,* al citar a ECP Incorporated v. OCS, 205 DPR 268, 281 (2020) y otros. Así pues, los tribunales no pueden, bajo el pretexto de deferencia a las determinaciones administrativas, imprimirle un sello de corrección a aquellas interpretaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Capote Rivera v. Voili Voila Corporation, *supra*, al mencionar a Graciani Rodríguez v. Garage Isla Verde, *supra*. Por ello, la deferencia a las decisiones administrativas debe ceder cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021).

*B.*

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear,

regular, modificar o extinguir obligaciones.[7] En este, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o al orden público.[8] Los acuerdos establecidos en el contrato tendrán fuerza de ley entre las partes.[9] Estos pactos, se perfeccionan por el mero consentimiento y desde ese momento cada una de las partes está obligada a cumplir con lo expresamente pautado y sus consecuencias. 31 LPRA Sec. 9771; Aponte Valentín v. Pfizer Pharmaceuticals, LLC., 208 DPR 263, 286 (2021).

Para que un contrato sea válido, deben concurrir tres elementos esenciales, a saber: (1) consentimiento de los contratantes; (2) un objeto cierto que sea material del contrato; y la causa de la obligación que se establezca. *Íd.*, a la pág. 284. El consentimiento prestado puede ser nulo cuando ha sido prestado por error, violencia, intimidación o dolo. Bosques vs. Echevarría, 162 DPR 830 (2004). Ahora, es importante conocer que no todo tipo de dolo produce la nulidad del contrato. Así pues, el dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado.[10] Para que el dolo cause la nulidad del contrato, deberá ser grave[11] y no puede haber sido empleado por las dos partes contratantes. Bosques vs. Echevarría, *supra*.

De otra parte, y a los fines de la controversia que hoy atendemos, también es significativo considerar que según dispone nuestro Código Civil, quien transfiere un bien a titulo oneroso responde por evicción y por los defectos ocultos del bien aunque los ignorase.[12] Igual trascendencia tiene recordar que el vicio redhibitorio es aquel defecto oculto en el bien transmitido a título oneroso y existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad

---

[7] Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA Sec. 9751.
[8] 31 LPRA Sec. 9753.
[9] 31 LPRA Sec. 9751.
[10] 31 LPRA, Sec. 6213.
[11] Dolo grave, es "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. 31 LPRA Sec. 6211.
[12] 31 LPRA Sec. 9851

que de haberlo conocido el adquiriendo no lo habría adquirido o habría dado menos por él.[13] En aquellos casos en los que en la transmisión de un bien mediante un contrato de compraventa, la parte vendedora se obliga, entre otras cosas, a garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido.[14]

-III-

Mediante la discusión de su único señalamiento de error, la parte recurrente nos invita a determinar que la decisión recurrida es contraria al informe técnico emitido por el perito del DACO y que en la causa de epígrafe no están presentes los elementos requeridos para ordenar la rescisión del contrato entre las partes. Con tal propósito, reproduce los mismos argumentos levantados contra la decisión al solicitar su reconsideración. Así, señala que de las determinaciones de hechos alcanzadas por el DACO no surge que el vehículo haya presentado problemas sustanciales que ameriten la rescisión del contrato o que tenía conocimiento previamente de los desperfectos del vehículo. Niega pues la existencia de las circunstancias particulares que autorizaran la rescisión de un contrato. Específicamente, rechaza la existencia de cualquier vicio sustancial en el consentimiento de los contratantes o que el objeto del contrato- o sea, el auto- sufriera de un vicio oculto de tal magnitud que lo hiciera inservible a su propósito; la transportación.

Con ese propósito, la parte recurrente señala que el expediente administrativo demostraba que en un periodo de 8 meses el vehículo fue utilizado por la Querellante por 8,246 millas. Según reclama, este importante dato derrotaba cualquier análisis y conclusión de vicio oculto

---

[13] 31 LPRA Sec. 9871.
[14] 31 LPRA Sec. 9991.

que exigiera la resolución del contrato, puesto que demostraba que los desperfectos del auto no impidieron su uso y ya fueron arreglados.

De otra parte, la parte recurrente niega que el testimonio de la recurrida no hubiera sido desmentido, tal cual determinó el DACO. Afirmativamente, en cuanto a esto plantea que el *Informe de Inspección* desmiente a la recurrida "al punto que podría inferirse conducta constitutiva de mala fe al establecer que el vehículo tenía dos fusibles desconectados que con sólo conectarlos dejaron de producir el desperfecto mecánico". Más aun, directamente afirma que toda vez que la recurrida tuvo el control, dominio y uso del vehículo, era razonable inferir y concluir que era ella quien desconectaba los fusibles y provocaba los desperfectos alegados.

Por último, en su escrito la parte recurrente manifiesta que del informe surgía su diligencia en la reparación oportuna del auto y que nunca se negó a repararlo. Por esta y demás razones brindadas, afirma que solamente procedía conceder en remedio la suma de $262.00 correspondiente al estimado efectuado por el Inspector.

Un cuidadoso estudio de la determinación recurrida nos permite apreciar que la rescisión determinada en el caso descansó en la credibilidad que el testimonio de la recurrida le mereció al Juez Administrativo.[15] De hecho, la porción dispositiva en la *Resolución* lee:

> Procedamos a adjudicar el derecho aplicable de conformidad a los hechos probados en el caso. **De la prueba <u>testifical</u> de la querellante entendimos probado que la unidad vehicular estuvo en reparaciones desde <u>febrero</u>, en marzo, y abril en dos ocasiones. En la segunda ocasión que el auto estuvo en abril para reparación no fue reparado sino hasta mediados de mayo o principios de junio de 2023. Para el mes de julio de 2023 el auto volvió a presentar problemas.** Ante la inacción de la parte vendedora para reparar, el 8 de agosto de 2023 la parte querellada se vio obligada a radicar [querella] ante el DACO. **<u>Al momento de radicarse la querella estaba configurada la acción redhibitoria.</u>** El informe pericial lo tomamos a los efectos de validar el testimonio y las alegaciones de la querellante. **Los defectos no fueron accesorios o que no menoscabaran el uso de la cosa y su finalidad de**

---

[15] Vemos a estos efectos, por ejemplo, que en la determinación de hecho número 15, el DACO afirmó que al testimonio de esta se le dio entera credibilidad.

**transportación. Todo lo contrario, fueron graves. A tal nivel que se realizó trabajos en la tapa del bloque y problemas de transmisión. Básicamente desde la entrega del vehículo este presentó los defectos mecánicos** y la parte querellada no los atendió eficiente y satisfactoriamente. La parte querellante le dio multiplicidad de ocasiones al vendedor y este fue negligente en el servicio de saneamiento y honrar garantía. Lo anterior, evidencia una acción resolutoria. (Énfasis suplido)

De la porción antes transcrita, es fácil apreciar que, la agencia encontró probado que desde el mismo mes en el que se adquirió el vehículo (**febrero 2023**), este tuvo desperfectos mecánicos que requirieron reparación. Igual situación se encontró evidenciada para el mes luego de haberse comprado el auto (**marzo 2023**), así como para el próximo (**abril 2023**). También quedó establecido que cuando el vehículo se llevó a reparar en abril 2023, no fue sino hasta mediados de mayo o principios de junio de ese año que la situación se remedió y que en julio 2023- cinco meses luego de haberse comprado- este volvió a confrontar problemas.

Adicional a lo antes enunciado, la agencia también determinó **en base al testimonio de la recurrida** que los desperfectos mecánicos **que el vehículo exhibió desde que se adquirió**, no fueron accesorios, sino graves.[16] Más aún, el Juez Administrativo- basándose en las declaraciones de la recurrida- estimó probado que los desperfectos del vehículo que la recurrida adquirió de la parte recurrente menoscabaron la finalidad y propósito para el cual este fue adquirido: su transportación y que la parte recurrente fue negligente en el saneamiento de estos.

Al confrontar los argumentos levantados por la parte recurrente contra la determinación impugnada al amparo de las normas de autolimitación judicial consignadas más arriba en esta sentencia, concluimos que la decisión recurrida merece nuestra deferencia, por lo que resolvemos confirmarla. La discusión que ofrece para atacar la resolución dictada en el caso es insuficiente en derecho para derrotar la deferencia que

---

[16] El Juez Administrativo destacó que algunos de los trabajos realizados al vehículo de motor fueron en la tapa del bloque y transmisión.

debemos, como foro apelativo, observar hacia las decisiones administrativas.

Como ya señalamos, en ataque a la determinación de rescisión decretada, la parte recurrente expuso que de las determinaciones de hechos efectuada por el DACO no surgía que el vehículo hubiese presentado problemas sustanciales que ameritaran la rescisión del contrato. También rechazó que los desperfectos mecánicos lo hicieran inservible a su propósito; afirmativamente argumentó que las anotaciones del expediente sobre el millaje del vehículo demostraban que la recurrida lo utilizó para viajar 8,246 en los 8 meses que tuvo su posesión; e indicó que contrario a lo que entendió el DACO, el testimonio de la recurrida sí fue controvertido por el informe, y que del mismo podía inferirse mala fe por parte de la recurrida. Ninguno de estos planteamientos, sin embargo, atiende específica y directamente las manifestaciones arriba transcritas.

Según ya consignamos, tales expresiones descansaron **exclusivamente** en la credibilidad que el testimonio de la recurrida ofreció durante la audiencia administrativa le mereció al juzgador de hechos y el valor probatorio que este aplicó a la evidencia sometida; incluyendo el informe. Por consiguiente, para derrotar la deferencia que la decisión administrativa merece, la parte recurrente estaba obligado a reproducir ante este Tribunal de Apelaciones la prueba oral desfilada durante la vista administrativa.[17]

La ausencia de una transcripción, regrabación o exposición narrativa de la vista administrativa celebrada en el caso nos obliga a tomar como ciertas todas las determinaciones de hechos alcanzadas por el DACO. De igual forma, tal carencia nos impide intervenir con la determinación de

---

[17] Al final de cuentas, cuando se señalan errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de reproducción de prueba oral, como: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. Pueblo v. Pérez Delgado, 2023 TSPR 35, 213 ____ al citar las Reglas 19, 29 y 76 de nuestro Reglamento, 4 LPRA Ap. XXII-B.

rescisión efectuada en el caso. Como puede apreciarse de la porción de la *Resolución* que más arriba transcribimos, el DACO concluyó que, **al momento de presentarse la querella, la acción rescisoria ya había quedado configurada**. Tal determinación- queda claro del lenguaje utilizado- descansó en la credibilidad que el testimonio de la recurrida le mereció al Juez Administrativo en cuanto a: los desperfectos mecánicos que el vehículo comprado exhibió poco después de la transacción; sobre el tiempo significativo que el vehículo estuvo en reparación; acerca de cómo estas circunstancias incidieron con el propósito para el cual fue adquirido **y por ende, en el consentimiento brindado por la recurrida al momento de la compra**; y la mala atención de la parte recurrente para con la situación.[18]

-**IV**-

Por los fundamentos arriba expuestos, confirmamos la *Resolución* emitida en el caso de epígrafe por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Nótese que, si bien la parte recurrente alega haber reparado adecuadamente el vehículo, el DACO concluyó que fue negligente en el saneamiento de los vicios. **Es más, es un hecho formulado que la parte recurrente nunca le hizo entrega a la recurrida de la hoja de servicios. Por tanto, ni siquiera el expediente demuestra que efectivamente tal como reclama, haya actuado diligentemente.**